LANDRY, Judge.
The sole issue involved in this action for workmen’s compensation benefits is the extent of residual disability, if any, suffered by plaintiff resultant of an accident which occurred during the course and within the scope of plaintiff’s employment by defendant, Southland Construction Company, which said defendant is admittedly engaged in a hazardous business. Plaintiff’s demand for penalties and attorney’s fees is ancillary to the aforesaid main issue. All elements necessary to plaintiff’s recovery herein, save and except that of disability extending beyond the period found and decreed by the trial court, have been admitted by defendants.
The trial court rendered judgment in favor of plaintiff awarding compensation for a period of five weeks in addition to compensation paid by defendant insurer. From said judgment plaintiff has appealed.
On appeal plaintiff complains that the trial court erred in finding that his period of disability lasted only five weeks beyond the period for which compensation was paid and that the judgment of the trial court should be reversed and an award be made herein decreeing plaintiff entitled to maximum benefits for total permanent disability during the period of such disability not exceeding 400 weeks.
Plaintiff, a common laborer, employed at the time of injury as a brick layer’s helper, was twenty-one years of age on the date of *132 his injury, namely, March 31, 1960. While working on a scaffold approximately 20 feet above ground level, plaintiff slipped and fell to the ground below. Plaintiff fell head first and extended his arms in an effort to break the force of the fall. Upon landing on his outstretched arms, head and chest, plaintiff was rendered unconscious and was immediately taken to a hospital and was placed in the care of Dr. E. E. Lafferty, Physician and Surgeon.
As a result of the fall plaintiff sustained minor contusions but serious and severe injury to both arms consisting of a com-minuted and displaced fracture of the lower end of the left radius (commonly called a Colie's fracture) and a compound fracture of the upper third of the right radius and ulna. In lay terminology, plaintiff sustained a fracture in the region of his left wrist and of the right forearm near the elbow.
Dr. Lafferty effected a closed reduction of the Colle’s fracture under general anesthesia and performed an open reduction of the fractured right radius and ulna which latter injury was stabilized by insertion of a pin in the ulna through the olecranon down the shaft and by affixing a metal plate on the radius with three metallic screws — two below and one above the fractured site. Although the metal plate affixed to the radius was equipped with four holes for screws only three screws were used because upon insertion of the plate, Dr. Lafferty found he would have to enlarge the incision to insert the fourth screw. Since he did not consider placement of the fourth screw a necessity, he decided against lengthening the incision and elected to close the wound with only three screws in the plate. Plaster casts were applied to both of the injured extremities and plaintiff was initially hospitalized for a period of nine days. On April 7, 1960, Dr. Lafferty removed both casts and the stitches from the incision made on plaintiff’s right arm. The injured members were again X-rayed and new casts applied to each arm. Three months following the accident the cast was removed from plaintiff’s left arm and one month subsequently Dr. Lafferty removed the cast from plaintiff’s right arm. Under local anesthesia the intramedullary nail was removed from plaintiff’s right ulna on October 11, 1960, and one week thereafter, namely, on October 18, 1960, Dr. Lafferty discharged plaintiff as able to resume his former employment.
Defendant insurer continued compensation payments to plaintiff through October 27, 1960. This present action was instituted by plaintiff on November 17, 1960, following which development defendant resumed payment of compensation through December 8, 1960.
The medical evidence regarding plaintiff’s alleged disability to perform work of the same or a substantially similar nature to that in which he was engaged at the time of injury is conflicting as will be demonstrated by our ensuing analysis of the evidence of each such expert who testified herein.
Dr. Blaise Salatich of New Orleans, a orthopedic surgeon of some 21 years experience in his specialty, examined plaintiff on March 1, 1961, at the request of plaintiff’s attorney. Dr. Salatich testified that X-ray examination revealed a well-healed fracture of the distal radius of the left arm, an ununited fracture of the styloid process of the ulna. The right forearm showed a deformity of the shaft of the ulna. There was a slight bowing in the midshaft of the radius, with internal fixation consisting of a metallic plate transfixed by three metal screws. He thought the fractures were solid and well healed.
Upon physical examination of plaintiff, Dr. Salatich noticed a visible and palpable deformity of the left forearm associated with loss of normal muscle tonicity, including loss of normal flexibility of the left wrist and hand motion, although no significant restriction of motion could be demonstrated. The left elbow presented tightness in full flexion, with a signficant degree of hypertension motion present. There was a visible and palpable deformity of the *133 right forearm and wrist associated with loss of muscle tonicity and soft tissue outline, the right forearm measuring approximately yi of an inch smaller in circumference than the left. Full flexion of the right elbow was restricted approximately 20 degrees, with full extension restricted approximately 15 degrees.
Dr. Salatich also found a moderate generalized tightness of the right elbow and wrist especially with restriction of movements of the wrist, including restriction of the movement of the hand and forearm, more outstanding on flexion, extension and especially supination. Active and passive attempts to overcome the limit of restriction initiated apparently quite severe pain. Dr. Salatich found a significant shortening of the left radius with a shortening of the left wrist due to the crushed and impacted type of fracture of the lower end of the left radius. He noted a rapid ease of fatigue including weakness of gripping and grasping strength in both hands, especially in the right hand and drew the following conclusions:
“I was of the impression that he had sustained (1) Severe crushing type injury of right upper extremity involving apparently compound fracture shaft radius and ulna, including extensive periarticular, capsular ligamentous and musculo fascial injury, of his forearm and wrist and that he had surgical intervention involving open reduction and internal fixation. I thought that this condition was in a subsiding stage associated with residual dysfunction and causalgic pain. (2) That he has sustained a crushing type injury to his left upper extremity involving healed fracture of the distal radius including fracture of the ulna styloid, including periarticular, capsular and ligamentous injury of his wrist of an extensive degree and that this condition was subsiding associated with residual dysfunction and pain. • (3) That he had sustained a contusional injury to his face associated with a cerebral concussion.”
According to Dr. Salatich, any action requiring the use of plaintiff’s wrist, forearm and the elbow or any combination thereof would result in pain. He considered the plaintiff incapable of performing the work of a brick mason’s helper con-; tinuously, comfortably and safely.
With regard to plaintiff’s future ability to perform his work, Dr. Salatich testified as follows:
“BY THE COURT: Doctor, it is your opinion that this man can never be rehabilitated to the point where he can do the type of work he was doing before?
“A. Your Honor this man presents clinical facts and findings rendering him a very poor candidate for the performance of imposing, laborious, demanding and exerting occupational duties, if these duties are to be performed continuously, efficiently, comfortably and safely.
“BY THE COURT: It is unlikely that he could be rehabilitated to the point where he could perform the duties of a brick tender’s helper?
“A. It is unlikely.”
Dr. Russell C. Grunsten of New Orleans, an orthopedist with one year’s experience, associated with Dr. H. R. Soboloff, examined the plaintiff on October 25, 1960 and January 10, 1961, and testified for the defendant.
On his first examination, Dr. Grunsten found the left elbow presented a range of motion of 40 degrees to 180 degrees with full pronation and supination. A prominence of the distal end of the ulna was indicative of some shortening of the radius with the patient presenting a limitation of ten degrees of ulnar deviation with the remainder of the wrist motion being within normal limits. Dr. Grunsten found a 14-inch atrophy of the upper right arm, although plaintiff is right-handed. Plaintiff complained to Dr. Grunsten of a constant ach *134 ing sensation in the right forearm which was not affected by activity, and he demonstrated a limited ability to flex and extend his right elbow. The right elbow presented a range of motion from 65 to 165 degrees and lacked 15 degrees of supination.
As of the first examination, Dr. Grunsten concluded that plaintiff had a 5% temporary disability of the left wrist and 20% temporary disability of the right elbow.
On January 10, 1961, Dr. Grunsten found the function of both upper extremities improved. The left extremity presented a normal range of motion involving the left elbow and left wrist articulation with no evidence of discomfort demonstrated even in the extremes of motion. The right arm had a loss of 10 degrees flexion and 15 degrees supination. Elbow extension and range of pronation were complete. Measurement disclosed no evidence of atrophy at the second examination. On this latter examination plaintiff made no complaint of pain in his left arm and reported only mild soreness over the radial aspect of the right proximal forearm.
Dr. Grunsten concluded plaintiff had a residual 10 per cent disability of the right elbow and forearm but felt that said incapacity “may well resolve itself even further on a gradual basis over a period of several months time particularly in association with performing normal working capacity.” He was of the further opinion that plaintiff could resume his former occupation and would benefit from returning to work although plaintiff might suffer some initial pain. In the opinion of Dr. Grunsten, such pain as plaintiff might experience upon returning to work, would not continue indefinitely unless some irritating factor aggravated plaintiff’s condition. He considered the plate affixed to plaintiff’s radius a possible source of such aggravation in view of the fact that X-rays showed the single screw which secured one end of the plate had to some extent “backed out”. In addition, he believed that the condition of the aforesaid screw could possibly account for the slight bowing observed in the affected radius. Should the plate cause irritation it would have to be removed surgically at an estimated cost of $350.00.
Dr. E. E. Lafferty, a general practitioner and surgeon of 52 years experience, testified on behalf of defendants. Dr. Lafferty considered the results of his surgery and treatment to be perfect in that he believed plaintiff had achieved maximum improvement and was able to resume his former duties without justifiable complaint of pain. He found no atrophy and no impaction. Contrary to the finding of Dr. Salatich he deemed the shortening of plaintiff’s arm to be inconsequential and of no particular significance. As of October 18, 1960, Dr. Lafferty was of the opinion that plaintiff was suffering no disability in either arm. Also contrary to the findings of Drs. Sala-tich and Grunsten, he was of the opinion that plaintiff would experience no pain upon lifting heavy objects — a daily requirement in the performance of the duties incumbent upon a common laborer engaged as a brick layer’s helper. Dr. Lafferty stated that he prescribed certain daily exercises for plaintiff to follow in order to rehabilitate the injured members and the clear import of his testimony is that he does not believe plaintiff followed his advice and instructions in this regard.
Counsel for defendant suggests that the testimony of Dr. Lafferty should be accorded greater weight than that of the orthopedists under the rule that the testimony of the treating physician is deemed of greater value than that of experts who examine an employee only for purposes of evaluating disability. On the other hand, plaintiff contends Dr. Lafferty is a so-called “company doctor” and for that reason, his testimony is not entitled to the weight ordinarily accorded that of a treating physician. While the record does contain evidence which indicates that Dr. Lafferty kept defendant insurer well informed as to all aspects of the case and has done considerable work for defendant insurer, nevertheless, his testimony throughout impresses *135 us as being sincere and well grounded. We detect nothing in Dr. Lafferty’s testimony indicative of bias or interest adverse to that of plaintiff. We have no hesitancy in concluding that his testimony is entitled to the weight normally accorded that of a physician who treats and attends an injured employee from the date of injury throughout the entire recovery and recuperative period.
Dr. Salatich and Dr. Grunsten both testified that after an injury of the type suffered by plaintiff, physiotherapy, consisting of special exercises and diathermy treatments, inter alia, should have been ordered under the supervision of the attending physician or a physical therapist. It was pointed out, however, that direct supervision is not absolutely necessary but that the patient must be shown how to perform exercises which entail rotating the wrist, squeezing a ball, in addition to certain other manipulations which strengthen the injured member, relax the tissues and promote healing of the soft tissue damage after the fractured bones have knitted and healed. Dr. Salatich explained that in an injury of the sort experienced by plaintiff there is an extreme degree of scarring around the fragments which scarring is not revealed by X-ray but is nevertheless the cause of residual disability. Concisely stated, Dr. Salatich explained that after the bones are healed, the soft tissue damage must be treated to prevent residual disability.
In this same regard, Dr. Lafferty’s testimony is to the effect that he did in fact prescribe exercises for plaintiff but, as previously stated, he was of the opinion that plaintiff has disregarded his advice in this connection. In addition, Dr. Laf-ferty stated that he had advised and instructed plaintiff to exercise his hand, to chop wood, hoe and shovel and otherwise perform work and that by so doing plaintiff would restore full use of his arms. Dr. Lafferty also stated that plaintiff reported inability to do the suggested exercises because of weakness in the affected members. However, Dr. Lafferty noted an increase in the size of plaintiff’s arms which indicated to him that plaintiff had used his arms as instructed.
Opposed to the testimony of Doctors Lafferty and Grunsten is that of plaintiff and plaintiff’s parents to the effect that plaintiff attempted to assist in the performance of work on the family farm on which plaintiff resided with his mother, father and family. The uncontradicted testimony of the aforesaid lay witnesses is to the effect that plaintiff was unable to perform such work as plowing, repairing fences and cutting fence posts because of pain and weakness in his arms.
In seeking reversal of the lower court’s adverse judgment appellant relies chiefly upon the jurisprudential rule enunciated in Jones v. Atlantic & Gulf Stevedores, Inc., La.App., 38 So.2d 653, to the effect that where the medical testimony is in conflict the courts will look to the record as a whole and give great weight to the lay testimony. Predicated upon the foregoing premise, esteemed counsel for appellant maintains that the record as a whole, considering the lay testimony of plaintiff and his parents, overwhelmingly preponderates in favor of the conclusion that plaintiff cannot work without pain and, therefore, in legal contemplation, must be deemed totally and permanently disabled.
While we are in complete accord with the rule pronounced in the Jones case, supra, unfortunately for present appellant, we find in the record a salient factor which renders said rule inapplicable to the case at bar.
We refer specifically to the following deductions appearing in the trial court’s written reasons for judgment, which observations detract considerably from the weight to be accorded plaintiff’s testimony:
“The testimony of the plaintiff and Doctor Salatich on the one hand and Doctors Lafferty and Grunsten on the other is irreconcilable.
*136 “It is, however, interesting to note that at the time that plaintiff last saw Dr. Grunsten, on January 10, 1961, he had no complaints relative to his left arm and only mild soreness over the radial aspect of the proximal forearm in the right arm.
“In view of the statement made to the Doctor at a nonsuspicious time which was some months before the trial of this case in Court, I can only conclude that Kagler was grossly exaggerating his complaints when he testified on the witness stand.
“The total lack of any objective finding on the part of any of the doctors who testified, and my belief that the disability of this man was properly evaluated by Doctors Lafferty and Grun-sten, when fortified by the belief that the plaintiff has failed to perform any of the remedial exercises recommended by the physicians, leaves me to believe that he is not at this time suffering any disability, and was not suffering from any disability at the time of the trial of the case.”
The foregoing excerpt from the trial court’s reasons for judgment clearly discloses that our learned brother below considered plaintiff was exaggerating his complaints of pain at the time of trial and, on that basis, placed little credence on plaintiff’s testimony regarding his inability to work without pain. Obviously, the rule advocated by illustrious counsel for appellant can have no application to a case in which the trial court rejects the testimony of the employee’s chief lay witness, namely, the injured employee himself.
We have carefully examined the record in the instant case and find nothing therein which induces us to take issue with the aforesaid finding of the trial court regarding plaintiff’s credibility. The judgment of the trial court in this respect is most certainly not manifestly erroneous.
It is the settled jurisprudence of this state that notwithstanding rules of evidence are relaxed and forms of procedure vastly simplified in suits for workmen’s compensation benefits, nevertheless, plaintiff in such an action must prove his claim by a reasonable preponderance of evidence, and conjecture and probability may not serve as the basis for judgment in claimant’s favor. Bellard v. Aetna Casualty & Surety Co., La.App., 134 So.2d 346; Johnson v. Cloud, La.App., 12S So.2d 478; Page v. Tremont Lumber Co., La.App., 108 So.2d 1.
Predicated upon the record as a whole, we conclude, as did the learned trial court, that plaintiff has failed to establish his claim by that preponderance of the evidence which the law requires.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.